IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STATE OF NEBRASKA,<br><br>      Plaintiff,<br><br>  vs.<br><br>STABL, INC., LANT, INC., LEON JOHNSON, AND ANN JOHNSON,<br><br>      Defendants. | 8:16CV351<br><br>MEMORANDUM<br>AND ORDER |

  This matter is before the Court on the Motion to Dismiss or Make More Definite and Certain, ECF No. 30, filed by Defendants Stabl, Inc. (f/k/a Nebraska By-Products), Lant, Inc., Leon Johnson, and Ann Johnson (collectively "Defendants"). Defendants seek dismissal of this action because of lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1); failure to state a claim upon which relief can be granted, pursuant to Rules 9 and 12(b)(6); and insufficient service of process, pursuant to Rule 12(b)(5). Alternatively, Defendants ask that Plaintiff State of Nebraska ("State of Nebraska") amend the Amended Complaint, ECF No. 15, to make it more definite, pursuant to Rule 12(e). For the reasons stated below, the Motion will be denied.

## BACKGROUND

  The following facts are those pled in the Amended Complaint, ECF No. 15, and assumed true for purposes of the Motion to Dismiss.

  Beginning in 1995, Stabl, Inc., ("Stabl") owned and operated an animal rendering facility in Lexington, Nebraska. ECF No. 15 ¶ 11, Page ID 42. Stabl was a Nebraska Corporation, originally incorporated as Nebraska By-Products, and wholly owned by Lant, Inc., ("Lant"), also a Nebraska Corporation. *Id.* ¶ 6, Page ID 41. Lant was wholly

owned by Leon Johnson, a Nebraska resident. *Id.* ¶ 7, Page ID 42. Ann Johnson was married to Leon Johnson and worked as an office manager for Stabl. *Id.* ¶¶ 6–7, Page ID 42.

Between 2007 and 2009, both the Nebraska Department of Environmental Quality ("NDEQ") and the Environmental Protection Agency ("EPA") issued notices to Stabl regarding violations of §§ 1311 and 1317 of the Clean Water Act, 33 U.S.C. §§ 1251–1388 ("Clean Water Act"), and § 81-1502 of the Nebraska Environmental Protection Act, Neb. Rev. Stat. §§ 81-1501 to 81-1532 ("NEPA"). Both agencies notified Stabl that failure to comply with either statute could result in the imposition of penalties of up to $10,000 per day per violation. *Id.* ¶¶ 12–17, Page ID 42–43. Although Stabl submitted a compliance plan in September 2009, Stabl never achieved compliance with either the Clean Water Act or the NEPA. *Id.* ¶ 18, Page ID 43.

On May 28, 2010, Stabl sold its rendering facility to Darling International for $15.2 million. *Id.* ¶ 26, Page ID 44. On July 13, 2010, Stabl made three separate wire transfers from its account at Platte Valley State Bank and Trust Company: (1) a $2 million transfer to Waddell and Reed, received by UMB Bank of Kansas City, Missouri, which listed the originator to beneficiary information as "Leon A. Johnson and Ann M. Johnson;" (2) another $2 million transfer to Waddell and Reed, received by UMB Bank of Kansas City, Missouri, listing the originator to beneficiary information as "Leon A. Johnson and Ann M. Johnson;" and (3) a $4 million transfer to Edward Jones, received by the Northern Trust Company of Chicago, Illinois, listing the originator to beneficiary information as "Leon and Ann Johnson." *Id.* ¶ 29, Page ID 44–45.

On August 10, 2011, the State of Nebraska and the United States of America brought an action in this Court against Stabl for violations of the Clean Water Act and NEPA. *Id.* ¶ 19, Page ID 43. On January 10, 2014, the Court entered judgment against Stabl in the amount of $2,285,874 to be divided equally between the plaintiffs. *Id.* ¶ 20, Page ID 43.

The State of Nebraska discovered the transfers on May 26, 2016, when the United States filed a Complaint in this Court, seeking payment of the judgment and alleging the $8 million in transfers to Leon and Ann Johnson were fraudulent. *Id.* ¶ 36, Page ID 45. On July 15, 2015, the State of Nebraska filed this action, alleging fraudulent transfers under Neb. Rev. Stat. § 76-705(a), and seeking payment of the amount owed, pursuant to Federal Rule of Civil Procedure 69. At the time of filing, Stabl had not paid any portion of the $1,142,937 owed to the State of Nebraska. *Id.* ¶ 2, Page ID 41. The State of Nebraska asks this Court to void the $8 million in wire transfers to Leon and Ann Johnson, enter judgments against Leon and Ann Johnson and Lant for the State of Nebraska's portion of the judgment against Stabl, and grant various other relief to aid in the collection of the judgment against Stabl.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." *Barton v. Taber,* 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Twombly*, 550 U.S. at 555). Thus, "'a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 678).

# DISCUSSION

## I. Subject Matter Jurisdiction

Initially, Defendants argue that this Court lacks subject matter jurisdiction because "federal courts do not possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." ECF No. 31 at 6, Page ID 89. The Court concludes jurisdiction in this action is proper.

One purpose for which federal courts may assert ancillary jurisdiction is "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994). This purpose is sometimes described as "enforcement jurisdiction" and "recognizes the inherent power of federal courts to exercise jurisdiction in order to enforce their judgments in certain situations where jurisdiction would otherwise be lacking." *Myers v. Richland Cty.*, 429 F.3d 740, 747 n.5 (8th Cir. 2005) (internal quotation marks omitted) (quoting *Fafel v. Dipaola*, 399 F.3d 403, 412 n.10 (1st Cir. 2005)). The Supreme Court has "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the . . . enforcement of federal judgments—including . . . the prejudgment avoidance of fraudulent conveyances." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (citing *Dewey v. West Fairmont Gas Coal Co.*, 123 U.S. 329, 332–33 (1887)); *see Comcast of IL X v. Multi-Vision Elecs.*, Inc., 504 F. Supp. 2d 740, 746 (D. Neb. 2007).

"Where the post-judgment proceeding is an effort to collect a federal court judgment, courts have permitted judgment creditors to pursue the assets of the debtor

in the hands of a third party under ancillary enforcement jurisdiction." *Rodriguez v. Lawns of Distinction*, No. 4:07-MC-447 CAS, 2008 WL 4941000, at *7 (E.D. Mo. Nov. 17, 2008). This type of action is distinct from those that seek to impose liability on a third-party. *Id.* (quoting *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 105 (2d Cir. 2001)) ("Since *Peacock* . . . most courts have drawn 'a distinction between post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability.'"); *see Epperson*, 242 F.3d at 105 ("*Peacock* does not hold that fraudulent conveyance claims brought in a subsequent action require an independent jurisdictional basis."); *see also IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.*, 438 F.3d 298, 311 (3d Cir. 2006) ("[T]he Supreme Court did not see a Rule 69 action as falling into the same category as the veil-piercing suit in *Peacock*.").

Here, the State of Nebraska seeks to collect on a judgment by tracing funds it alleges were fraudulently transferred to a third-party prior to the judgment.[1] The action falls within the Court's ancillary jurisdiction.

Federal Rule of Civil Procedure 69 "permits judgment creditors to use any execution method consistent with the practice and procedure of the State in which the district court sits." *Peacock*, 516 U.S. at 359; *see* Fed. R. Civ. P. 69. In other words, "a federal district court has same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law." *Comcast of IL X*, 504 F. Supp. 2d at 747 (citing *H.H. Robertson Co. v. V.S. DiCarlo General Contractors,*

---

[1] Defendants also argue that jurisdiction is lacking because the State of Nebraska filed this action separately from the original one in which liability was imposed. However, this does not affect jurisdiction. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.*, 438 F.3d 298, 314 (3d Cir. 2006) ("A Rule 69 action can be filed as part of the original suit or as a separate suit.").

*Inc.*, 994 F.2d 476, 477 (8th Cir. 1993); *United States ex rel. Goldman v. Meredith*, 596 F.2d 1353, 1357 (8th Cir. 1979); Fed.R.Civ.P. 69(a)).

"Nebraska recognizes two types of creditor's bills.  The first is to reach equitable assets or property of a debtor on which execution at law cannot be levied.  The second is used in aid of an execution at law, as to set aside an encumbrance or a transfer of property made to defraud creditors."  *Doksansky v. Norwest Bank Nebraska, N.A.*, 615 N.W.2d 104, 108 (Neb. 2000) (citing *First Nat. Bank v. Daggett*, 497 N.W.2d 358 (Neb. 1993)).  The second type of bill is governed by Section 36-708 of the Nebraska Uniform Fraudulent Transfer Act, Neb. Rev. Stat. §§ 36-701 to 36-712 ("NUFTA"), which allows a judgment creditor to levy execution on assets of the debtor that were fraudulently transferred[2] or their proceeds.  *See* Neb. Rev. Stat. § 36-708.[3]  This is precisely what the State of Nebraska seeks in this action.  Thus, subject matter jurisdiction is proper.

**II.  Statute of Limitations**

Defendants argue that the Amended Complaint should be dismissed because the State of Nebraska did not bring the action prior to the running of NUFTA's four-year statute of limitations.  "A cause of action with respect to a fraudulent transfer or obligation under the Uniform Fraudulent Transfer Act is extinguished unless action is brought . . . under [§ 36-705(a)(1)], within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or

---

[2] For purposes of this action, under NUFTA, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor . . . ." Neb. Rev. Stat. § 36-705(a)(1).

[3] Defendants additionally argue that dismissal is warranted because the State of Nebraska did not allege sufficient facts to meet the three requirements for an equitable-assets creditor's bill.  However, these requirements apply to the first type of creditor's bill, not the second type, which is at issue here.  *See Comcast of IL X*, 504 F. Supp. 2d at 747 (enumerating the three requirements as applying to the "first category [of creditor's bills], an 'equitable assets' bill").

7

could reasonably have been discovered by the claimant . . . ." Neb. Rev. Stat. § 36-710.

The State of Nebraska filed its original complaint on July 15, 2016, more than six years after the allegedly fraudulent transfers occurred. However, the State of Nebraska alleged in its Amended Complaint that it filed the action within one year after the transfers could reasonably have been discovered. ECF No. 15 ¶¶ 36 & 39, Page ID 45–46.

Defendants argue that the State of Nebraska reasonably could have discovered the transfers earlier than one year prior to their actual discovery by the State of Nebraska, and thus, the state of limitations has run regardless of tolling. In support of this argument, Defendants make several assertions refuting certain facts in the Amended Complaint. These assertions are not subject to judicial notice nor are they supported by evidentiary affidavits, thus the Court will not consider them at this juncture. *See* Fed. R. Civ. P. 12(d). Rather, the Court must assume as true those facts asserted in the Amended Complaint. Accordingly, the Court will deny this argument without prejudice to reassertion in a motion for summary judgment.

### III.  Service of Process

Defendants also seek dismissal pursuant Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. The State of Nebraska served all Defendants via certified mail. Under Federal Rule of Civil Procedure 4, "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in

the state where the district court is located. . . ."  Fed. R. Civ. P. 4(e).[4]  Nebraska law allows for service "by certified mail with a return receipt requested showing to whom and where delivered and the date of delivery, and . . . filing with the court proof of service with the signed receipt attached."  Neb. Rev. Stat. § 25-505.01(c).[5]

In their Motion, Defendants asserted that service of process was insufficient, but did not specify the supposed insufficiencies until submission of their reply brief.  In the reply brief, Defendants argued that the Amended Complaint was not included with the summons and that the delivery receipts filed with the Court did not include signatures.  Defendants have not denied that they received the summonses with copies of the Complaint, as specified in the United States Postal Service receipts attached to the State of Nebraska's proof of service, ECF Nos. 24–27, *i.e.*, delivery of summons and Complaint to Ann Johnson, and to Leon Johnson in his individual capacity and on behalf of Lant on July 20, 2016 at 9:45 a.m.; and delivery of summons and Complaint to Leon Johnson on behalf of Stabl on July 25, 2016, at 1:09 p.m.

Regarding the inclusion of the Amended Complaint, the Court notes that the original Complaint was filed on July 15, 2016, and the Amended Complaint was filed on August 19, 2016.  The State of Nebraska filed its proof of service on August 23, 2016, demonstrating service effected on the Defendants as of July 20 and 25, 2016.  *See* ECF Nos. 24–27.  Defendants appear to argue that because proof of service was filed *after* the Amended Complaint superseded the original complaint, service was defective.  Defendants provide no legal or logical support for this proposition, and the Court finds

---

[4] Fed. R. Civ. P. 4(h)(1) allows for the same method of service for a corporation.
[5] "A corporation may be served by personal, residence, certified mail, or designated delivery service upon any officer, director, managing agent, or registered agent, or by leaving the process at the corporation's registered office with a person employed therein, or by certified mail or designated delivery service to the corporation's registered office."  Neb. Rev. Stat. § 25-509.01.

none. The certified mail receipts, although entered after the filing of the Amended Complaint, show that service was returned executed as of July 20 and 25, 2016, prior to the filing of the Amended Complaint.

While the delivery receipts filed with the Court do not include signatures of the Defendants, Neb. Rev. Stat. § 25-507.01(3) provides: "Failure to make proof of service or delay in doing so does not affect the validity of the service." *See also Mendoza v. Osterberg*, No. 8:13CV65, 2014 WL 3784122, at *3 (D. Neb. July 31, 2014) (citing *Myrtle v. Graham*, 2011 WL 446397 (E.D. La. 2011)) ("[D]ismissal should not result when plaintiff made good faith attempt to comply with rules for service and defendant did not demonstrate prejudice or lack of actual notice."); *id.* (citing *Haley v. Simmons*, 529 F.2d 78, 79 (8th Cir. 1976)) ("[A] motion to dismiss for insufficiency of service may be denied where there has been substantial compliance with Rule 4, the mistake was innocent, and the defendant was not prejudiced.").

The Court will not dismiss the action for insufficient service of process. *See Herzog v. Wiche*, No. 8:07CV498, 2008 WL 4754152, at *2 (D. Neb. Oct. 29, 2008) (denying a motion to dismiss under Rule 12(b)(5) because the defendant "received actual notice of the action, and there has been no showing that she was prejudiced by the manner of service"); *Centennial Molding, LLC v. Tote-A-Lube*, No. 8:05CV175, 2005 WL 2076509, at *3 (D. Neb. Aug. 26, 2005) (citing *Minnesota Mining and Mfg. Co. v. Kirkevold*, 87 F.R.D. 317, 324 (D. Minn. 1980); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)) ("Evidence that service actually reached the intended person strongly supports a conclusion that service is valid because due process has been afforded.").

**IV. Rule 9 & Rule 12(b)(6)**

Defendants also seek dismissal under Rule 12(b)(6). Specifically, Defendants argue that the State of Nebraska has not pled its allegations of fraud with sufficient particularity to satisfy Rule 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005); *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). "Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *Id.* (quoting *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003)).

Defendants argue that because the Amended Complaint does not specify which entities owned which portions of the funds at issue, the Amended Complaint is not sufficient. However, such detail is not required under Rule 9. The Amended Complaint alleges that after the sale of Stabl's facility, the proceeds of the sale were transferred to other Defendants in order to escape creditors. The Amended Complaint provides specific information as to which funds were transferred to defraud creditors, when, and to whom. This is sufficient particularity to satisfy Rule 9. For the same reason, the Amended Complaint is neither so vague nor so ambiguous that Defendants "cannot

reasonably prepare a response." *See* Fed. R. Civ. P. 12(e). Thus, Defendants' motion for a more definite statement under Rule 12(e) will be denied.

## CONCLUSION

For the reasons state above, Defendants Motion to Dismiss will be denied. Accordingly,

IT IS ORDERED: Defendants' Motion to Dismiss or Make More Definite and Certain, ECF No. 30, is denied.

Dated this 29th day of November, 2016

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge